UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
WINDWARD BORA LLC,

                Plaintiff,

        -against-

RONNIE MORI and WILLIAM CARMEN,

                Defendants.
----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
CV 18-6534 (DRH) (ARL)

**LINDSAY, Magistrate Judge:**

      Before the Court, on referral from District Judge Hurley, is the defendant's letter motion seeking to vacate the default judgment and to dismiss this case for lack of personal jurisdiction and insufficient service of process. The defendant, Ronnie Mori ("Mori"), also requests that his Order to Show Cause dated March 3, 2020, be renewed. The plaintiff, Windward Bora LLC ("Windward"), opposes the motion. For the reasons set forth below, the undersigned respectfully recommends that the motions to dismiss the case for lack of personal jurisdiction/improper service and to vacate the default judgment be denied.[1] The undersigned further recommends that Windward be permitted to execute the Decree of Foreclosure dated January 7, 2020. ECF No. 14.

## BACKGROUND

      On March 20, 2007, Mori executed and delivered a mortgage and note to National City Bank to secure the sum of $68,200.00, on the property commonly known as 1043 Commack Road, Dix Hills, NY 11746 (the "Mortgage and Note"). Compl. ¶¶ 8-9. The Mortgage and Note were assigned and transferred to a number of different entities between 2007 and 2017, *see id*. ¶¶

---

[1] The Court did not address Mori's request to reinstate the March 20, 2020 Order to Show Cause staying the judgment for foreclosure and sale given its recommendation that the motion to vacate the default should be denied.

10-12, but ultimately ended up assigned to Winward. *Id.* ¶ 13. A copy of the Assignment of Mortgage is annexed to the Complaint as Exhibit "D."

In any case, by the time Windward became the owner and holder of the original Note with Allonges and original Mortgage, Mori had defaulted on the loan. Specifically, nine years earlier, Mori had failed to comply with the terms and provisions of the Mortgage and the instruments secured by the Mortgage by failing to make the monthly payment due on June 20, 2008. *Id.* ¶ 16. Mori also failed to make any subsequent monthly payments. *Id.* Although it is not clear why prior holders of the Mortgage and Note allowed the default to continue for so long, nine months after being assigned the Mortgage, Winward served Mori with a 90-day notice to cure pursuant to the New York Real Property Actions and Proceedings Law ("RPAPL") § 1304(1). *Id.* ¶ 17. The 90-day notice advised Mori that as of August 17, 2018, the Mortgage had been in default for 3711 days and that $66,753.92 was still due and owing. *Id.* Ex. E. The notice further indicated that failure to correct the default by September 16, 2018 could result in the acceleration of the loan and the commencement of legal action.[2] *Id.* Despite being served with the notices, Mori remained in default. *Id.* ¶ 19.

As a result, on November 16, 2018, Windward commenced this action pursuant to RPAPL §§ 1301 *et seq.*, seeking to foreclose on the Mortgage. On March 26, 2019, the Clerk of the Court entered a certificate of default against Mori and the defendant, William Carmen, who had been named as a necessary party defendant because he is a judgment creditor by virtue of a Suffolk County Court Judgment that is subordinate to the plaintiff's Mortgage. ECF No. 10. On

---

[2] At the time, Windward had also complied with the RPAPL § 1306(1) registration requirements as well as all the provisions of Section 595a, Section 6-1 of the Banking Law and RPAPL § 1304, except where it was exempt from doing so. *Id.* ¶¶ 17-8.

April 12, 2019, Windward filed a motion for a default judgment of foreclosure and sale. ECF No. 10. That motion was referred to the undersigned on April 15, 2019.

On December 19, 2019, the undersigned issued a report, which recommended that Judge Hurley grant Windward's motion for a default judgment of foreclosure and sale against Mori and award it the principal sum of $67,518.78, with interest from May 20, 2008 to April 10, 2019, in the amount of $60,704.28, and $500.00 for the referee's fees, for a total award of $128,723.06, plus post judgment interest pursuant to 28 U.S.C. § 1961(a). On January 7, 2020, Judge Hurley adopted the recommendation in its entirety and the Court entered a Judgment of Foreclosure and Sale and closed the matter.

According to Mori, the sale was scheduled for February 24, 2020. However, sometime in January, he received a phone call "from a guy from a foreclosure company" who advised him of the sale. Mori Aff ¶ 10, ECF No. 18. Mori claims that until that day he was unaware of the instant action. *Id.* Winward contends that on or around February 20, 2020, Mori retained counsel who contacted counsel for Windward claiming Mori wished to resolve the action. ECF No. 26. As such, Windward agreed to postpone the sale to March 4, 2020, in order to give the parties time to discuss a post-judgment settlement. *Id.* However, Mori's initial counsel never engaged in any settlement discussions. *Id.* Instead, between February 20 and March 3, Mori, tried unsuccessfully to retain counsel willing to file a motion to vacate the default. Mori Aff ¶ 14, ECF No. 18. As a result, on March 3, the day before the sale, Mori filed a *pro se* Order to Show Cause, seeking to "cancel the default" entered in the case and to stay the foreclosure sale alleging that he had never been served with the summon and complaint. ECF Nos. 18, 19.

Upon receipt of the motion, Judge Hurley entered an Order temporarily staying the sale pending a hearing on the motion. ECF No. 21. He also set a date for submission of the

3

plaintiff's opposition and scheduled a hearing for May 20, 2020. However, upon receipt of the plaintiff's opposition, Judge Hurley canceled the hearing and referred the motion to vacate to the undersigned for a Report and Recommendation. In that Referral Order, the parties were advised to contact the undersigned for a new hearing date.

Although the parties' submissions indicated that a traverse hearing might be warranted,[3] by the time the Order to Show Cause was referred to the undersigned, then Governor Cuomo had issued Executive Order 202.8, directing that "[t]here shall be no enforcement of . . . a foreclosure of any residential or commercial property for a period of ninety days." In fact, on May 7, 2020, Governor Cuomo issued a subsequent Executive Order directing that "[t]here shall be no . . . enforcement of . . . a foreclosure of any residential or commercial mortgage, for nonpayment of such mortgage, . . . by someone that is eligible for unemployment insurance or benefits under state or federal law. . .. " While it was clear to the Court that nonpayment in this case had not stemmed from the healthcare crisis, the undersigned, nonetheless, recommended that the action be stayed through June 20, 2020, and that after June 20, 2020, upon a renewed motion by Mori, a traverse hearing would be scheduled to address the merits of his claim that he was not served.

Judge Hurley adopted that recommendation as well, and in June, upon receipt of the parties' notice, once again, referred the traverse hearing to the undersigned. Immediately upon receipt of the referral, a hearing was scheduled for mid-July. However, in August, the parties asked the undersigned to cancel the traverse hearing and instead refer them to court annexed mediation, which it did. According to Windward, the mediation session took place on October 23, 2020, and the action was settled by way of an oral loan modification agreement. Mori's

---

[3] "[A] defendant's sworn denial of receipt of service 'rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing.'" *US Flour Corp. v. Certified Bakery, Inc.*, No. 10-CV-2522 JS WDW, 2012 WL 728227, at *3 (E.D.N.Y. Mar. 6, 2012)(citing *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am, Inc.*, 301 F.3d 54, 57 (2d Cir. 2002)).

4

counsel did not dispute this representation. In fact, following the mediation, Windward drafted a written agreement pursuant to the agreed-upon terms, Mori's counsel reviewed the document and the Loan Modification Agreement (the "Agreement') was finalized. However, Mori, at first delayed, and then ultimately failed to sign the written agreement or to make the first payment which was due on January 31, 2021.

Accordingly, on July 1, 2021, at Windward's request, the undersigned held a conference with the parties to discuss the status of the settlement. During the conference, both sides reported that the case had settled. Mori's counsel was given two weeks to submit a status report confirming that his client had signed the agreement and made payments. On July 12, 2021, defense counsel advised the Court that Mori had experienced a death in his family but would sign the settlement agreement and make payment on or before July 16, 2021. ECF No. 44. Despite that representation, Mori again failed to do so and, in August, Windward asked the Court to schedule another conference with the parties. Rather than hold another conference with the parties and having concluded based upon the representation of both sides that the matter was settled, the undersigned, by order dated August 23, 2021, directed the parties to execute the Agreement by September 10, 2021, and file a copy with the Court. The Court also ordered that all back payments had to be made by September 10, 2021.

By letter dated September 13, 2021, Windward advised the Court that it had not heard from Mori or Mori's counsel. ECF No. 48. Accordingly, on October 14, 2021, the undersigned held another conference to discuss the status of the settlement. At this conference, Mori's counsel advised, for the first time, that his client would not execute the agreed upon Loan Modification Agreement because he was unable to make the payments under the Agreement in addition to paying the taxes which he owed. ECF No.50 (recorded transcript). At this

5

conference, Mori's counsel advised that his client intended to renew his motion of March 3, 2020, to vacate the default judgment on the basis of improper service, the motion that is now before the Court. After he filed the motion, Mori also filed for bankruptcy, which temporarily stayed this matter.

## DISCUSSION

At the outset, the Court notes that the parties agree that before a Court can exercise personal jurisdiction over a defendant, the plaintiff must "(1) have served the defendant in accordance with the requirements of state law; and (2) the assertion of jurisdiction must comport with due process, which requires that service of process be 'reasonably calculated, under all the circumstances' to inform the defendant of the action and provide an opportunity to be heard and respond." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). They also agree that when the validity of service of process is raised in a motion to set aside a default judgment, as here, the movant bears the burden of proof. *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005). However, Windward sharply contests the sufficiency of Mori's evidence to support his claim of lack of service specifically with respect to the description of the person served at 1043 Commack Road. Windward also disputes that Mori lacked actual notice of the action or an opportunity to be heard.

Nonetheless, as the undersigned indicated to the parties during the last conference, the Court must first address the timing of Mori's renewed motion. To this end, the Court notes that "lack of personal jurisdiction is not a defense of right but rather a privileged defense that can be waived 'by failure to assert it seasonably.'" *Fed. Home Loan Mortg. Corp. v. Dutch Lane Assocs.,* 775 F. Supp. 133, 136–37 (S.D.N.Y. 1991) (citing *Neirbo Co. v. Bethlehem Corp.*, 308 U.S. 165, 168, 60 S. Ct. 153, 154, 84 L. Ed. 167 (1939)). Moreover, "[t]he defense of improper

6

service of process, although no specific time limit is set for its raising by Rule 12(h)(1), must be raised in a reasonably timely fashion or it is waived." *Id.* (citing *Burton v. Northern Dutchess Hosp.*, 106 F.R.D. 477, 481 (S.D.N.Y. 1985)).  Although Mori did raise insufficiency of process when he first filed his Order to Show Cause in March 2020, the Court is not bound to consider that defense given that Mori through his attorney chose to actively participate in this case.  Mori through his attorney asked this Court to cancel the traverse hearing and joined in a petition to the Court for a referral to Court-annexed mediation in order to resolve the underlying dispute.  From June 2020 through October 2021, Mori, through counsel, participated in the Court-annexed mediation and partook in several conferences with the Court at which he advised that Mori had agreed to the terms of the oral loan modification agreement and that the written agreement memorializing the settlement terms was being reviewed.  Mori joined in the request to cancel the traverse hearing and did not indicate that he intended to preserve his claim of defective service.  From Mori's active and substantive participation in this matter, the undersigned had concluded and so finds that Mori waived his claim of improper service.  *See Ortiz v. Wagstaff*, 523 F. Supp. 3d 347, 357 (W.D.N.Y. 2021) (citing *Datskow v. Teledyne, Inc., Cont'l Prod. Div.*, 899 F.2d 1298, 1303 (2d Cir. 1990) (holding that defendant's conduct bars it from complaining about the defective form of service)); *Fed. Home Loan Mortg. Corp. v. Dutch Lane Assocs.*, 775 F. Supp. 133, 138 (S.D.N.Y. 1991).  Accordingly, the undersigned respectfully recommends that the motion to dismiss for lack of personal jurisdiction/improper service be denied.

      The Court also finds that Mori's motion to set aside the default judgment should be denied.  Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c).  When determining whether there is "good cause" to vacate entry of default under Rule 55(c), a district court must consider three factors: (1) the willfulness of the default;

7

(2) the existence of a meritorious defense to the defaulted claims; and (3) prejudice to the non-defaulting party should relief be granted. *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001). No one factor is dispositive. *See Murray Eng'g, P.C. v. Windermere Props LLC*, No. 12 Civ. 0052, 2013 WL 1809637, at *4 (S.D.N.Y. Apr. 30, 2014). However, because an entry of default is generally disfavored and is considered an "extreme sanction" that "must remain a weapon of last, rather than first resort," *see Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981), any doubt "as to whether a default should be granted or vacated" must be "resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

In this case, the factors weigh against vacating the default. As to the first factor, willfulness of the default, on January 22, 2019, Thomas Burke ("Burke"), the process server, served Mori with a copy of the Summons, Verified Complaint, New York Real Property Actions and Proceedings Law 1303 Notice and Certificate of Merit pursuant to CPLR 3012(b) at 1043 Commack Road, Dix Hills, NY 11746 (the "premises") by service on a person at the home who was of suitable age and discretion. ECF No. 8. On January 31, 2019, Burke then mailed the documents to Mori in a First Class postpaid properly addressed envelope to the premises. In fact, in response to Mori's initial motion to vacate the default, Burke indicated that he recalled the specific details of that service. Burke Aff. ¶ 8; ECF No. 26, Ex. B. Specifically, he averred that he had visited 1043 Commack Road at various times on six separate occasions. *Id.* ¶ 9. He further indicated that on at least two occasions, there were people within the residence, but no matter how long he was at the door of the residence knocking, he received no answer. *Id.* ¶ 10. On January 22, 2019, at 5:25 p.m., a male individual finally opened the door and Burke asked the gentleman if he was Mori. *Id.* ¶ 11. The individual advised that he was not Mori but did confirm that it was his residence and he was not in the military. *Id.* ¶¶ 12-3. Burke asked for his name,

8

but he refused to divulge it. *Id*. After leaving a copy of the papers with that person, Burke mailed a set by first class mail. *Id.* ¶ 14.

To rebut the presumption of service established by Burke's affidavit, Mori submitted an affidavit averring that he had not lived at the 1043 Commack Road address since 2009. Mori Aff. ¶ 3. He also swore that he did not know that the case was filed until January 24, 2020, notwithstanding the fact that his daughter was living in the house with Alejandro H. Rizzo ("Rizzo") since 2016. *Id.* ¶ 8. Finally, at Mori's request, Rizzo submitted an affidavit claiming that he did not match the description of the person served on January 22, 2019. Rizzo Aff. at ¶ 3. Yet, Mori never challenged receipt of multiple mailings to the premises. Nor were any of the notices returned undeliverable. See ECF No. 52. As such, Mori's claim of lack of notice was, at best, dubious. Nonetheless, drawing all inferences in favor of Mori, this first factor still weighs slightly in his favor.

The same, however, cannot be said of the second and third factor. To begin with, Mori has never suggested that he has a meritorious defense to the underlying foreclosure claims. "[A]llegations are meritorious if they contain 'even a hint of a suggestion' which, if proven at trial, would constitute a complete defense." *Weisel v. Pischel,* 197 F.R.D. 231, 239 (E.D.N.Y. 2000). As Windward notes in its opposition, Mori has actually admitted to obtaining the loan being foreclosed and defaulting on it. ECF No. 52. Indeed, in his affidavit, Mori stated, "I did get a Mortgage around 2007 but after a few payments I forgot about it. I now see that I didn't make any payments since around 2007." Mori Aff. ¶ 5, ECF No. 18. Moreover, given the age and history of this case as well as the delays caused by Mori's conduct that are likely to have cause, at a minimum, witnesses to lose their memory regarding pertinent events, there is no question that Winward would be prejudiced if the default was vacated. *See HICA Educ. Loan*

9

*Corp. v. Feintuch*, No. 12-CV-5243 ADS, 2013 WL 1898997, at *5 (E.D.N.Y. May 7, 2013). Accordingly, the undersigned further recommends that the motion to vacate the default judgment be denied and Windward be permitted to immediately execute the Decree of Foreclosure dated January 7, 2020.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
April 25, 2022                                                    _____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge